RYAN et al. v. WITT et al. (No. 8046.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 28, 1915. On Motion for Rehearing, Jan. 30, 1915.)

1. AGRICULTURE ⬤⟹6—FARMERS' UNION—ORGANIZATION—OFFICERS—RIGHT TO PROPERTY AND RECORDS.

The Farmers' Educational & Co-operative Union of America was incorporated under laws of Texas, and land was conveyed to a district union, which thereafter obtained a private charter from the Union of America, and, after certain parties had received a state charter for a state union of Texas, the district union resolved to and obtained a charter under the state organization and amended its by-laws and constitution and substituted the word "Texas" for the word "America" in its name, and thereafter acted under authority of the charter granted by the state organization, though not surrendering its former charter. *Held*, that its duly elected executive committee, which, under the constitution and by-laws before the change in organization, adopted and acted under thereafter, were vested with control of its property, were entitled to charge and control of the warehouse and cotton yards which the union had built upon the land conveyed to it, and to possession and control of its books, constitution, and by-laws.

[Ed. Note.—For other cases, see Agriculture, Dec. Dig. ⬤⟹6.]

2. AGRICULTURE ⬤⟹6—FARMERS' UNION—ACCEPTANCE OF NEW CHARTER—EFFECT.

A farmers' district union chartered under a national organization, by subsequent application for a charter from a state organization and the acceptance thereof, ipso facto repudiated and surrendered its charter from the national organization, though without formal repudiation or surrender.

[Ed. Note.—For other cases, see Agriculture, Dec. Dig. ⬤⟹6.]

On Motion for Rehearing.

3. WORDS AND PHRASES—"CHARTER."

A "charter" is the authority by virtue of which an organized body acts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Charter.]

4. APPEAL AND ERROR ⬤⟹1175—REVERSAL—RENDERING JUDGMENT FOR APPELLANT.

In an action by plaintiffs claiming to be the officers and executive committee of a district farmers' union to enjoin defendants from interfering with its property and books, constitution, and by-laws, where it did not appear that defendants were prevented from introducing any evidence they had, where they filed no motion for a continuance, and did not indicate the existence of any evidence not given at the trial, the court, on reversing judgment for defendants, might render judgment for plaintiffs, where such judgment was sufficiently supported by uncontroverted evidence upon the material issues, or by the allegations in plaintiffs' verified pleadings not denied by defendants' answer.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. ⬤⟹1175.]

5. AGRICULTURE ⬤⟹6—FARMERS' UNION—OFFICERS—CONTROL OF PROPERTY.

Where the officers of a farmers' district union had not violated any of its by-laws or private charter provisions, but were elected in accordance with such by-laws and given possession and control of its property, their acts, as officers of the union, were binding upon other members of the same organization.

[Ed. Note.—For other cases, see Agriculture, Dec. Dig. ⬤⟹6.]

Appeal from District Court, Eastland County; Thomas L. Blanton, Judge.

Action for injunction by J. E. Ryan and others against W. S. Witt and others. Judgment for defendants, and plaintiffs appeal. Reversed, and judgment rendered for plaintiffs.

Alexander, Power & Ridgway, of Ft. Worth, for appellants. J. R. Stubblefield, of Eastland, for appellees.

BUCK, J. Plaintiffs filed in the district court of Eastland county the following original petition:

"Now comes J. E. Ryan, J. L. Tucker, D. E. Tyrone, M. R. Brooks, J. W. Pulley, J. A. Blackwell, W. I. Tyrone, and Fayette Wetherman, all of whom reside in Eastland county, Tex., and hereinafter called plaintiffs, and complain of W. S. Witt, G. R. Stracener, and D. J. Neill, all of whom reside in Eastland county, Tex., and the Continental State Bank, a corporation, with its principal office at Gorman, Eastland county, Tex., and hereinafter called defendants; and for cause of action plaintiffs would show to the court:

"First. That the Farmers' Educational & Co-operative Union of Texas is an organization of farmers duly incorporated and chartered as a state organization under the laws of the state of Texas, with branches and subsidiary organizations known as district, county and local unions, to each of which is issued a charter from the state organization under and by virtue of the constitution and by-laws of said state organization. That said Texas State Union by its constitution and by-laws recognizes and affiliates with the Farmers' Educational & Co-operative Union of America, being a charter corporation, and in turn said Texas State Un-

ion is recognized by the national organization as being affiliated with it.

"Second. That said national union gives out, quarterly, a secret password to all state unions affiliated therewith and gives such password to the Texas State Union. That the Texas State Union, through its secretary, communicates said password to county unions in good standing, and county unions in turn communicate said password to local unions in good standing, and the local unions communicate said password to the individual members of said locals who are in good standing; and under the constitution of said order said local unions may form a district union, and only members in good standing in the union selected from such locals in good standing are entitled to participate in the proceedings and business of district or local unions, and only such members are entitled to the password.

"Third. That there is now, and was at the times hereinafter mentioned, a district union affiliated with the said state union and known as the Gorman District Union, which district union was up to about March, 1913, composed of the following local unions, viz., Howard, Hay, Almeda, Jewell, Gorman, Grandview, and Kokomo, all in Eastland county, and Indian Mountain in Comanche county. That on or about March, 1913, the local unions at Gorman, Kokomo, and Grandview local, from and about January 1, 1914, withdrew from the state union and county union, and their charters were canceled or surrendered to the state union, and from and since said dates said last-named locals have ceased to exist as a part of the said Farmers' Union of Texas, have ceased to pay dues to the state union as is required by the constitution and by-laws of the order, and by the action of the said locals the right to participate by delegates or otherwise in any state, district or county meeting of said union was forfeited, and the right to receive the password of said union was forfeited to all the members of said seceding locals.

"Fourth. That the affairs, business, and property of said Gorman District Union are in the control and management of plaintiffs, as successors to these original officers of said district union, and plaintiffs are the officers and directors of said Gorman District Union, being the duly elected and acting officers thereof as follows: J. E. Ryan, president; J. L. Tucker, vice president; D. E. Tyrone, secretary; and M. R. Brooks, J. W. Pulley, J. A. Blackwell, W. I. Tyrone, and Fayette Wetherman, who constitute the executive committee—said officers having been duly elected by representatives of local unions in good standing in said union as provided by the constitution and by-laws.

"Fifth. That the said Gorman District Union owns a certain tract or parcel of land with a cotton warehouse thereon situated in the town of Gorman, Eastland county, Tex., known as the Gorman District Union Warehouse, containing about two acres of land and described as follows: Lots 2 and 3 x/i. v. in the town of Gorman, Eastland county, Tex., as shown by the records of Eastland county or shown by tax rolls or deed, volume 73, page 2, D. R. Eastland county for full description, and of the value of about $1,000, and plaintiffs, as the officers and executive committee of said district union, are entitled to the possession, management, and control of said warehouse property for the benefit of the loyal members in good standing belonging to said Gorman District Union.

"Sixth. That the three seceding unions above named, whose members were not, after about the date above mentioned, members of the state, district, county, or local unions, were not entitled to the password of said order or to any of its privileges held on Saturday, January 10, 1914, some kind of a meeting, and defendants W. S. Witt is claiming to be president and G. R. Stracener is claiming to be secretary of said seceding unions and claiming the right to the control and possession of said warehouse property and threatening to take entire control and possession of said property and deprive plaintiffs of the control and possession thereof, and have an agent in charge thereof, and said Stracener has possession of the books, charter, constitution, and by-laws and papers belonging to said district union, and has refused to deliver said books, charter, and papers, constitution, and by-laws to plaintiffs, who are the legal custodians thereof and entitled thereto.

"Seventh. That the members of said district union in good standing as aforesaid under the provisions of the constitution and by-laws are entitled to the annual profits made from the operation of said warehouse, it being provided that any such dividends shall be paid pro rata to the loyal members of the Farmers' Educational & Co-operative Union of Texas of the Gorman District, and that there is now on hand in said fund for distribution among said loyal members about the sum of $300, which amount is and was deposited by said Stracener in the Continental State Bank at Gorman, Tex.

"Eighth. That the said Stracener was formerly the secretary of said district union, and as such secretary came into the control of said money, and is now threatening to pay out a part of the same to persons who are not members of said district union and not entitled thereto, and refuses to deliver it to plaintiffs for proper distribution, and said defendant bank has the custody of said money and will pay out same if directed to do so by said Stracener, and it is necessary for your honor to grant an injunction to restrain said defendants from such acts, or said money will be paid out to plaintiffs' irreparable injury, as it could be only recovered, if at all, by a multitude of suits for small amounts which would entail great trouble and expense.

"Ninth. That said warehouse and warehouse property was originally purchased by subscription made by individual members of the district union and title taken in the name of the then officers, but with the agreement that the subscribers be paid back the amounts contributed and that the property should then be owned by the said district union and the profits divided pro rata among the loyal members thereof as above set out, and that the subscribers have been repaid in full.

"Tenth. That a 'loyal member,' as used herein, is defined by the constitution and by-laws of said organization as being one who is a member of the local or county union, and in harmony with the state and national unions, and that all of plaintiffs are loyal members of said farmers' union and entitled to a part of said fund, and on information and belief plaintiffs allege that the defendants Witt, Stracener, and Neill, and others acting therewith, are not loyal members of said farmers' union and are not entitled to any part of said fund.

"Eleventh. That there are large numbers of loyal members of said district union; that plaintiffs are entitled to the custody of said funds for distribution among said loyal members, and bring this suit for themselves and for all other loyal members of said district union.

"Twelfth. That defendants Witt, Stracener, and Neill, with other persons, have taken possession of said warehouse, placed an agent in charge of same and refuse to allow plaintiffs to have control or possession thereof, to which they are entitled as officers and representatives of said district union.

"Thirteenth. On information and belief, plaintiffs allege that on the first Saturday in October, 1913, defendant Neill attended the regular district meeting of said district which met with the Jewell Local, and, though he was not a member of the said farmers' union, insisted on

participating in the business of said meeting, by some irregular means had possession of the secret password of said union, and refused to leave, and did participate in said meeting over the protest of the loyal members. That Kokomo, the local union of which said defendant had been a member, had withdrawn from said county and state union, had surrendered its charter, and said Neill was not and is not a member of said union. That on the 1st of November, 1913, at a meeting of the Gorman District Union at Gorman, Tex., said defendant Neill was again present, was in possession of the secret password of the union, and by his conduct in voting as a representative of the Kokomo Local, which local had theretofore surrendered its charter and was not entitled to participate in said meeting, created much disturbance; said Neill at said time not being a member of said Farmers' Union of Texas, but having withdrawn therefrom and claiming to be the president of another organization known as the Farmers' Educational & Fraternal Union. That the purpose of said Neill was and is to create dissension in and disturb the orderly proceedings of said district meetings, and plaintiffs fear he will continue to so act, and there is no way for plaintiffs to prevent said Neill from entering said meetings except by physical violence, unless an injunction be granted restraining him from participating in said district meetings and from using said secret password.

"Fourteenth. That plaintiffs as officers of said district union, and for themselves as loyal members thereof, and for all other loyal members of said district union, being entitled to possession and control of said warehouse, property, and money, and owning an interest therein, have no adequate remedy at law and will be greatly damaged, and the affairs of said union will suffer great injury unless relief be granted in equity.

"Wherefore, premises considered, plaintiffs pray for writs of injunction restraining defendant Continental State Bank from paying out said money without further order from this court, restraining defendants Witt, Stracener, and Neill from in any manner interfering with plaintiffs' control and possession of said warehouse, and requiring said defendants to restore possession thereof to plaintiffs requiring defendant Stracener to at once deliver to plaintiffs all books and papers and property and the constitution and by-laws of said district union in his possession, or to deliver same into the custody of this court; restraining defendant Neill from using the secret password of said Farmers' Educational & Co-operative Union and from interfering in any way with or participating in said district meetings; that said injunction be made perpetual; for citation and on hearing for judgment for possession and control of all of said property, for costs of suit, and for such other and further relief, special and general, in law and in equity, to which they may be entitled."

Upon the presentation of said petition to the district judge, the court granted a temporary writ of injunction restraining defendants "from in any manner disposing of the property described in said petition," and further ordering notices to be issued to defendants citing them to appear at a later day of the term to show cause why the permanent injunction prayed for should not be granted. Defendants Witt, Stracener, and Neill filed their answer as follows:

"Now comes the defendant, and demurs to the plaintiffs' petition, and says that the same shows no cause of action, and of this the defendants pray the judgment of the court.

"Now comes the defendants and denies all and singular the allegations, contained in the plaintiffs' petition and demands strict proof of the same.

"First. The defendants deny the facts, stated in paragraph 5 of the plaintiffs' petition, and expressly say that the said facts are not true. On the contrary, the plaintiffs allege that the property, described in paragraph No. 5 of the plaintiffs' petition, is the property of the Gorman District Farmers' Educational & Co-operative Union of America, composed of the following local unions: Gorman Local No. 1771; Kokomo Local Union No. 665; Willow Branch Local Union No. 989; New Hope Local Union No. 933; Hay Local Union No. ——; Desdemonia Local Union No. 1443; Howard Local Union No. 948; Jewell Local Union No. ——; Indian Mountain Local Union No. ——; Rock Ridge Local Union No. ——; Grandview Local Union No. 776. That the said Gorman District Farmers' Educational & Co-operative Union of America are now in the possession and control of said property, and have been since the said lots were purchased. That the defendants W. S. Witt and G. R. Stracener, the president and secretary, respectively, of the said Gorman District Farmers' Educational & Co-operative Union of America, is now in possession of the said property, and holding the same in trust for the owners of the same, and the defendants pray that, upon final hearing of this petition, the defendants be quieted, in their title and possession of the said property, and that the plaintiffs be perpetually enjoined from the interfering with their title or possession of the said property.

"Second. That the plaintiffs are not entitled to the assets, which are in the possession of W. S. Witt and G. R. Stracener, but the said assets are held by G. R. Stracener, who is holding the said assets for the use and benefit of the members of the Gorman District Farmers' Educational & Co-operative Union of America, composed of the locals, above enumerated, in paragraph 1 of this answer, and the defendants pray that their title and possession of the said assets be quieted, and that the plaintiffs be perpetually enjoined from in any manner interfering with the said assets or disturbing the defendants, in their title and possession of the same.

"Third. The defendants expressly deny that the plaintiffs are entitled to the annual profits, which may arise from the warehouse, and the property described in paragraph 5 of the plaintiffs' petition, and of this the defendants pray the judgment of the court.

"Fourth. The defendants expressly deny that the said G. R. Stracener is threatening to pay the funds which are in his possession to any person who is not entitled to receive the same, but, on the contrary, the said G. R. Stracener is holding the said funds, in trust, for the use and benefit of the owners of the same, and he prays that the plaintiffs be perpetually enjoined from in any manner interfering with the said funds, and with his possession of the same, and of this the defendants pray the judgment of the court.

"Fifth. That the facts stated in the tenth paragraph of the plaintiffs' petition is not true.

"Sixth. The defendants deny that the plaintiffs are entitled to the possession of the funds described in the plaintiffs' petition, either for their own use or for the use of others, and of this the defendants pray the judgment of the court.

"Seventh. The defendant D. J. Neill expressly denies that he ever was unlawfully in possession of the password of the Farmers' Educational & Co-operative Union of America, but he was, up to January 1, 1914, lawfully in possession of the password of the Farmers' Educational & Co-operative Union of America, but since the 1st day of January, 1914, the said D. J. Neill had not been in possession of

the password of the said Farmers' Educational & Co-operative Union of America, and he has not since the said 1st day of January, 1914, sought or attempted to use the said password, and is not seeking to intrude on any meeting or lodge, where he is not entitled to go, and has never done so; wherefore, he says that the plaintiffs are not entitled to an injunction, and of this the said Neill prays the judgment of the court. The defendants pray that this cause be heard on its merits, and that the relief hereinbefore besought be granted, and for cost of suit and general and special relief."

Later plaintiffs filed their first supplemental petition in way of replication, as follows:

"Come now the plaintiffs and file this their first supplemental petition in reply to the original answer of defendants, and for such replication say:

"(1) That they deny the allegations contained in the first paragraph of said answer, and say that the facts in regard to said property are these: That deed to the land on which said warehouse is located was originally made to the Gorman District Union, composed of the locals named in said paragraph, but that at the time of the execution of said deed the order known as the 'Farmers' Union' was doing business in Texas under the name of the Farmers' Educational & Co-operative Union of America, and that on the 16th day of November, 1910, after having taken a referendum vote of all the local unions in Texas, and a majority having voted therefor, the name of said Farmers' Union in Texas was changed to the Farmers' Educational & Co-operative Union of Texas, and on said date a charter was granted by the state of Texas, that the locals composing the Gorman District Union voted for or participated in said vote, and that thereafter on July 12, 1912, said district union passed a resolution to obtain a charter under said state organization, and that on August 18, 1912, said charter was duly issued to the district union, and it has been acting thereunder since said time, and that said district union by resolution duly passed on November 8, 1912, changed the word 'America' in its by-laws to the word 'Texas,' and that by constitution and by-laws the executive committee and officers of said district union had and have charge and control of said warehouse and property, and that in law and in equity said property should remain in control of plaintiffs, and that there is no Farmers' Union of America doing business in Texas except through the said Texas Union.

"(2) Plaintiffs say from the facts stated, not only are they entitled to the control and possession of said property, but title to the same should be vested in them as trustees, so that they may carry out the objects and purposes of said union.

"(3) Wherefore, they pray as in their original petition, and for title to said property, and for general and special relief."

The defendant the Continental State Bank of Gorman filed its answer denying the allegations contained in paragraph 7 of plaintiffs' original petition, denying that there had been any money deposited in said bank by the said G. R. Stracener as the agent of the Farmers' Educational & Co-operative Union of Texas, which for brevity we will hereafter style the F. E. & C. U. of T., or of the Gorman District, but admitting that there had been deposited by said Stracener on January 17, 1914, $196.65, and that said amounts stood in said bank to the credit of the said G. R. Stracener. The defendant bank further alleged that it had paid out no money

belonging to the F. E. & C. U. of T., and that since January 17, 1914, it had paid out no money belonging to the said G. R. Stracener. It further prayed that evidence be heard upon the issue involved and upon judgment of the court that, if it be found that said money so deposited to the credit of said G. R. Stracener belonged to said Gorman District F. E. & C. U. of T., the defendant bank be permitted to deposit said amount of money with the clerk of the court, etc.

Upon these pleadings, trial was had before the court and judgment rendered dissolving and vacating the temporary writ of injunction theretofore granted, and denying the permanent writ of injunction prayed for, and adjudging costs of suit against the plaintiffs, and from this judgment the plaintiffs appealed.

Plaintiffs and defendants each filed their briefs in this court. Plaintiffs assigned error as shown by assignments 1 to 12, inclusive. The court filed his findings of fact and conclusions of law, which findings of fact are as follows:

### "Findings of Fact.

"(1) I find: That on April 14, 1907, the following was issued to certain parties for a district union to be known and designated as 'Gorman District No. 105,' located at Gorman, Eastland county, Tex., to wit: 'Charter. In things essential, unity; and in all things charity. The Farmers' Educational & Co-operative Union of America. To All unto Whom These Presents Shall Come—Greeting: Know ye, that the Farmers' Educational & Co-operative Union of America, by virtue and authority in its officers, vested by charter from the state of Texas, duly filed in the office of the Secretary of State in compliance with law, have this day granted and do hereby grant to W. O. Russell, Prest., R. J. Gallaohon, Vice Prest., C. J. Watson, Sec. & Treas. Gorman, M. A. Dorman, Chap., G. C. Tarrange, D. K. Earl Muncill, Cond., and their successors, this charter for a district union to be known and designated as Gorman District Union No. 105, located at Gorman, Eastland county, fully constituting them a district union of the Farmers' Educational & Co-operative Union of America, with full powers to perform all the duties and ceremonies appertaining to the same, whilst they conform to the rules and usages of the order. In witness whereof we have caused this to be signed by our president and secretary, with seal affixed, and indorsed by the organizing officer, at Dallas, Texas, this the 14th day of April, A. D. 1907. B. F. Chapman, Secretary. D. J. Neill, Organizing Officer. E. A. Calvin, President. [Seal affixed.]' And that under said charter an association of persons, designating themselves as the Gorman District Union of the Farmers' Educational & Co-operative Union of America, met at stated intervals in the town of Gorman, Eastland county, Tex., carrying on certain secret fraternal work and transacting business that was incident or pertaining to such union.

"(2) That on August 31, 1906, antedating said last-mentioned charter, J. M. Hirst and wife, E. A. Hirst, sold and conveyed, under general warranty deed, the following property situated in Eastland county, Tex., being lot No. 3, in block No. 13, in the town of Gorman, to the Gorman District, Farmers' Educational & Co-operative Union of America, composed of the following local unions, to wit: Gorman Local Union No. 1771; Kokomo Local Union No. 665; Willow

Branch Local Union No. 989; New Hope Local Union No. 933; Hay Local Union No. ——; Desdemonia Local Union No. 1443; Howard Local Union No. 948; Jewell Local Union No. ——; Indian Mountain Local Union No. ——; Rock Ridge Local Union No. ——; and Grandview Local Union No. 776. The granting clause in said deed being as follows: 'Have granted, sold and conveyed and by these presents, grant, sell and convey, unto the said Gorman District, the Farmers' Educational & Co-operative Union of America, composed of the above-named local unions,' etc. 'To have and to hold the above-described premises, together with all and singular the rights and appurtenances, thereto in anywise belonging, unto the said Gorman District, Farmers' Educational & Co-operative Union of America, composed of the above-named local unions, their heirs and assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Gorman District, Farmers' Educational & Co-operative Union of America, composed of the above-named local unions, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.' Which deed was duly acknowledged by said grantors and was filed for record in Eastland county, Tex., on May 5, 1908, and recorded in Volume 73, pages 2 and 3, of the Deed Records of Eastland County, Texas.

"(3) That the consideration in the above deed was the sum of $25 cash, and a note for $300, which was executed by said Gorman District Union, and all of the above consideration was advanced and paid by defendants, who thereafter were reimbursed by said Gorman District Union of the Farmers' Educational & Co-operative Union of America; a vendor's lien being retained in said deed, and there having been nothing introduced in evidence in this case to show the said vendor's lien had ever been released of record.

"(4) That the following is the constitution and by-laws of said Gorman District Union, to wit:

" 'Constitution and by-laws of the Gorman District Union No. 105, of the F. E. & C. U. of A., adopted in regular session at Gorman, Texas, January 12, A. D. 1907:

" 'Preamble.

" '1. This district union was organized to gather the various local unions that we may be better prepared to meet and demand our just rights, and to conduct our business in accordance with the golden rule, "Do unto others as we should have others do unto us," thus building up a brotherhood that will recognize and respect the rights of all men.

" '2. The Gorman District Union Warehouse was built by and for the Gorman District Union and is now owned and shall be by the same. We desire to conduct the business of the warehouse and cotton yard upon the general principals of equal rights to all, special privileges to none.

" '3. After having paid the many assessments to all gates, bridges and middlemen, we now propose to own our own toll gates, and bridges, and build in the near future a direct road to the consumer of our raw materials so that the producer may receive more for his labor, and the consumer of the manufactured articles pay less for what he uses.

" 'Constitution and By-Laws.

" 'Section 1. The Gorman District Union shall be composed of its officers, which shall be, one president, one vice president, one secretary, one treasurer, one lecturer, one chaplain, one doorkeeper, one conductor, and an executive committee of five and one delegate from each ten members in good standing and a majority fraction thereof, and one delegate at large from each lo-

cal union. The delegates from two-thirds of local unions which constitutes the district union, shall constitute a quorum to do business.

" 'Section 2. The executive committee of said district union shall have charge of the warehouse and cotton yard business as directed by said district union from time to time.

" 'Section 3. The duties of said officers shall be the same as in the state union where it can be applied to district business.

" 'Section 4. The Gorman Warehouse shall be built and cotton yard arranged by and for the Gorman District Union of the F. E. & C. U. of A. of Eastland County, Texas.

" 'Section 5. And shall be built on the certificate and donation plan. All donations will be thankfully received and used in the construction of same. All money loaned to said district union by members belonging to said local unions of said district union, shall receive a warehouse certificate or receipt that shall stand against said warehouse and cotton yard until same shall have been redeemed and fully paid without interest.

" 'Section 6. All dividends accruing in the district treasury above running expenses, shall be and is hereby set aside for the purpose of redeeming said certificates, or receipts, and each person so holding a certificate or receipt shall receive their per cent. according to the amount loaned said district union.

" 'Section 7. After all certificates or receipts shall have been paid or redeemed and canceled, each and all members belonging to the Gorman District Union of the F. E. & C. U. of A. No. 705, in good standing and patronize the yard, shall have an equal share in said warehouse and cotton yard in every respect, and shall share their part of said dividends when they accrue in said district treasury at the end of each cotton season in each year, if not otherwise ordered by said district union.

" 'Section 9. All members of the various locals constituting said district union are earnestly solicited to give said warehouse and cotton yard their entire patronage, thereby manifesting strict fidelity to their obligations, as well as true loyalty, to their noble order, such fidelity and loyalty will also greatly enhance the financial interests of all affiliated and tend to give general if not complete satisfaction.

" 'Section 10. Also, when cotton is being stored for better prices, it shall be stored in said warehouse or cotton yard and the members thereof shall comply with the rules and regulations that may be established by said District Union from time to time.

" 'Section 11. It is hereby provided that this constitution and by-laws may be amended by the said district union when in legal session to do business, provided it shall be recommended by a two-thirds vote of the local unions constituting the said district union.'

"(5) That said Gorman District Union built upon said lot a warehouse, the money being advanced by the defendants, and was thereafter reimbursed to them by said Gorman District Union, all of which occurred prior to any connections the plaintiff thereafter had with said Gorman District Union.

"(6) That on November 16, 1910, there was filed in the Secretary of State's office at Austin, Texas, the following charter, to wit:

" 'State of Texas, County of Tarrant. Be it known: that we, the undersigned citizens of Texas, hereby make application to the state of Texas, for a charter for the following purposes and as follows, to wit: First. The name of this corporation shall be the Farmers' Educational & Co-operative Union of Texas. Second. The purpose of this corporation shall be the organization of farmers to protect themselves in their pursuits. Third. The place where its business shall be transacted shall be at Fort Worth, Texas, and at such other places in the state of Texas, as shall be determined upon by

its executive committee. Fourth. This corporation shall exist for a period of fifty years. Fifth. The number of its directors shall be five and for the first year shall be as follows; whose respective places of residence respectively follow their names: F. I. Townsend, Snyder, Texas. M. C. Fields, Lott, Texas. T. B. Taylor, Gouldbusk, Texas. J. P. Lane, Gallatin, Texas. W. D. Lewis, Topsey, Texas. Sixth. There shall be no capital stock of this corporation. Witness our hands at Fort Worth, Texas, this the 15th day of October, 1910. F. I. Townsend. M. C. Fields. W. D. Lewis.

" 'State of Texas, County of Tarrant. Before me, the undersigned·authority, on this day personally appeared F. I. Townsend, M. C. Fields, and W. D. Lewis, known to me to be the persons whose names are subscribed to the foregoing instrument and each acknowledged to me that he had executed the same for the purposes and considerations therein expressed. Given under my hand and seal of office, this the 15th day of October, A. D. 1910. W. R. Parker, Notary Public, Tarrant County, Texas.'

"Endorsed: 'Filed in the office of the Secretary of the State this 16th day of November, 1910, W. B. Townsend, Secretary of State.

" 'Department of State. I, W. B. Townsend, Secretary of State, of the state of Texas, do hereby certify that the foregoing is a true copy of the charter of the Farmers' Educational & Co-operative Union of Texas, with the indorsements thereon, as now appears of record in this department. In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the seal of state at my office in the city of Austin, Texas, this the 17th day of November, A. D. 1910. [Seal.] W. B. Townsend, Secretary of State.'

"(7) That on the top page 108 of the minute book of said Gorman District Union, there appears the following, which was introduced in evidence, to wit: 'Resolution No. 2. We, your committee, recommend to get a new charter for the district union to do business under. Carried.' But in this connection I find that there was no evidence introduced to show whether the same was business transacted at a regular meeting of said Gorman District Union, whether said union was in session at such time, or whether there was a quorum present, or whether the same was in any way binding upon the said Gorman District Union; there being nothing to show that the said minute was ever, in any way, approved, acted upon, or ratified by said Union.

"(8) That from said minute book, on top of page 16, there was introduced in evidence the following: 'Resolution No. 3. Whereas, the Gorman District Union has adopted the new charter, we recommend the word America be changed to Texas in the by-laws of our district union and adopt same and change No. from 102 to 22. Carried.' But in this connection I find that there was nothing introduced in evidence to show that the same was passed at an authorized meeting of said Gorman District Union, or whether there was a quorum present, or whether it was the regular order of business, or whether it was in any way ever read, approved, or in any way ratified or acted upon by the said Gorman District Union.

"(9) That on the 18th day of August, 1912, a charter was issued, as follows, to wit: 'Charter. In things essential, unity, in all things, charity. The Farmers' Educational & Co-operative Union of Texas. To All Unto Whom This Presents Shall Come, Greeting: Know ye, that the Farmers' Educational & Co-operative Union of Texas, by virtue of authority in its officers, vested by charter from the state of Texas, duly filed in the office of the Secretary of State in compliance with law, have this day granted and do hereby grant unto G. B. Neill, Jr., president, R. K. Lee, vice president, G. R. Stracener, secretary and treas., Gorman, Texas,

R. Rasco, chaplain, W. O. Russell, lecturer, .W. L. Wood, D. K. J. S. Fonville, conductor, W. S. Witt, M. T. Harrell, J. M. Mannry, W. T. Gerligan, G. M. Sullivan, ex committee, and their successors, this charter, for a district union to be known and designated as Gorman District Union No. 21, located in Eastland county, Texas, fully constituting them a district union of the Farmers' Educational & Co-operative Union of Texas, with full power to perform all duties and ceremonies appertaining to the same, whilst they shall conform to the rules and usages of the order. In witness thereof, we have caused this to be signed by our president and secretary with seal affixed and indorsed by J. L. Armstrong, state organizer, at Fort Worth, Texas, this the 18th day of August, A. D. 1912. C. Smith Secretary. Peter Radford, President. ————, Organizing Officer. [Seal affixed.]'

"(10) That the following, constituting the constitution and by-laws of the Farmers' Educational & Co-operative Union of Texas, was introduced in evidence, to wit:

## " 'Constitution and By-Laws.

" 'The name of this organization shall be the Farmers' Educational & Co-operative Union of Texas, and shall work under a charter of corporation procured from the Secretary of State of the State of Texas. The Farmers' Educational & Co-operative Union of Texas, shall remain a part of the Farmers' Educational & Co-operative Union of America, incorporated under the laws of Texas, September 17, 1902, and shall pay dues to the said F. E. & C. U. of A. in accordance with the provisions of the constitutions of said organization. This constitution is for the government of the Farmers' Educational & Co-operative Union of Texas, and all its local, district and county unions.

" 'The local secretary-treasurer, shall send county and state dues and fees, to the county secretary-treasurer. The county secretary-treasurer shall send state dues and fees, to the secretary-treasurer of the Farmers' Educational & Co-operative Union of Texas; the state secretary-treasurer shall send the quarterly password to the county secretary-treasurer, who shall furnish said password to the local secretary-treasurer entitled to the same. The state secretary-treasurer shall pay all national dues out of the state dues therefore, exempting the local membership from the payment of same.

" '(24) It shall be the duty of the secretary of each local union to notify quarterly the secretary of the Farmers' Educational & Co-operative Union of Texas, of all dues paid to the county secretary. Any local union failing to do so, shall forfeit its charter, and can only be reinstated by paying up all past dues.

" '(28) A charter is the authority under which a union does its work, and it is the duty of the president to see that the charter is present when the union is opened for business.

" 'By-Laws. (1) Each delegate to any union shall present written credentials from the secretary-treasurer of his union.'

"(11) I find that the said district union of the Farmers' Educational & Co-operative Union of America at Gorman, Tex., never did at any time surrender its·said charter dated April 14, 1907, but still has the same, and there is nothing in evidence showing that any demand has ever been made upon said Gorman District Union to surrender the same.

"(12) That there is nothing in the charter granted by the state of Texas, to the Farmers' Educational & Co-operative Union of Texas, or in the charter thereunder granted by the said Farmers' Educational & Co-operative Union of Texas, to said Gorman District Union, or in the constitution and by-laws of the Farmers' Educational & Co-operative Union of Texas, or in the constitution and by-laws of the said Gorman District Union, that would give the said Farm-

ers' Educational & Co-operative Union of Texas any interest in or control over its said property at Gorman, Tex., either real or personal, or would permit the said Farmers' Educational & Co-operative Union of Texas to take charge of same under any circumstances or conditions, or would in any way cause the same to revert to the said Farmers' Educational & Co-operative Union of Texas."

[1, 2] In appellant's first assignment of error they urge that the court erred in not rendering judgment for plaintiffs for possession and control of the warehouse property described in plaintiff's petition, and in their second assignment of error, which two assignments will be considered together, they urge that the court erred in not rendering judgment for plaintiffs for possession and control of the books, constitution, and by-laws of the Gorman District Union described in plaintiffs' petition supporting each assignment by a proper proposition and statement.

We are of the opinion that both assignments should be sustained. The uncontroverted evidence shows: First, that the F. E. & C. U. of A. was incorporated under the laws of Texas, September 17, 1902 (Statement of Facts, p. 6). Second, that the deed from J. M. Hirst and wife, E. A. Hirst, to the Gorman District, F. E. & C. U. of A., which deed conveyed the lot and parcel of land upon which the warehouse was subsequently built, was executed August 31, 1906, and that the recitations in said deed show that property therein mentioned was conveyed by the grantors to the Gorman District, F. E. & C. U. of A., as shown by the court's findings (paragraph 2). Third, that on April 14, 1907, said F. E. & C. U. of A. granted and issued a private charter to W. O. Russell, president, and others, for a district union to be known and designated as Gorman District No. 105, located at Gorman, Eastland county, Tex. (Findings of Fact, par. 1). Fourth, that on October 10th W. D. Lewis and others applied for a charter for the F. E. & C. U. of T.; that on November 17th thereafter said charter was granted by the state of Texas (Statement of Facts, pp. 1, 2). Fifth, that the change in the name from the F. E. & C. U. of A. to the F. E. & C. U. of T. was ratified by a majority vote of all the local unions in Texas upon a referendum vote, and that thereafter, July 12, 1912, the Gorman District Union passed a resolution to obtain a charter under the state organization; said charter being issued by the said state organization August 18, 1912. Sixth, that on November 8, 1912, said Gorman District Union amended its by-laws and constitution so as to limit the right of members to share in the proceeds derived from the conduct of the cotton yard to those members who were in good standing and patronized the cotton yard, and also substituting the word "Texas" for "America" in the name of said Gorman District Union, and changing the number from "105" to "21." It is true

that the court finds in his findings of fact, paragraphs 7, and 8, that said two resolutions were not shown to have been passed at authorized meetings, or that a quorum was present, or whether it was the regular order of business, or whether they were ever read or approved, or in any manner ratified and acted upon by the said Gorman District Union, yet the testimony of G. R. Stracener, who is the defendant in this suit and was the secretary of the Gorman District Union at the time of the entries aforesaid in said minutes and kept the minutes of these meetings, shows that these minutes were correctly kept, and therefore the recitations in said minutes and their force and effect should be most strongly construed against the defendants. Therefore this court would be justified in concluding that all necessary and legal requirements had been complied with to give such resolutions legal and binding effect. We are further induced to believe from the record that thereafter the Gormon District Union acted under and by the authority of the charter granted it by the state organization; for, while the court found in his findings of fact, paragraph 11, that the district union "never did at any time surrender said charter dated April 14, 1907" (the charter issued by the national organization), "but still has the same," etc., yet the application by the district union for a charter from the state organization, and the acceptance thereof by the district union, was, in effect, a repudiation and surrender of the charter theretofore granted by the national organization. This is upon the same principle that the acceptance of another office by an officer, inconsistent with the one previously held, and his qualification therein, would be deemed ipso facto a resignation of and from the office previously held by him. It would require no formal repudiation or surrender of such charter to the national organization on the part of the district union, but the acceptance of and the operation under the charter from the state organization would constitute such repudiation and surrender of the charter theretofore issued by the national organization.

Since the appellants, i. e., M. R. Brooks, J. A. Blackwell, Fayette Wetherman, W. I. Tyrone, and J. W. Pulley, are shown by the evidence to be the duly and legally elected executive committee, and since it is shown that under the constitution and by-laws of said Gorman District Union No. 105, F. E. & C. U. of A., adopted in regular session at Gorman, Tex., January 12, 1907, and thereafter adopted, or at least treated as adopted, and acted under as the constitution and by-laws of the Gorman District Union No. 21, F. E. & C. U. of T., with certain specified changes and amendments, it seems to us that as such they still have the legal authority to have charge of and control of the affairs of said warehouse and cotton yard, except "as directed" (otherwise) by said district union

from time to time. It is not shown that said district union has directed otherwise, or that it has vested the authority to have charge and control of said warehouse and cotton yard in any other person or persons than the executive committee aforesaid.

We do not wish to be understood as saying that any legal title to any of the property described in plaintiffs' petition is vested in such executive committee, but just the right to exercise the control and management thereof while the members of said executive committee hold said office and until otherwise directed by said Gorman District Union. The question of title to any of the property mentioned in plaintiffs' petition is not involved in this suit and is not intended to be determined by this court.

The judgment is reversed, and judgment here rendered for appellants.

## On Motion for Rehearing.

In their motion for rehearing appellees strenuously insist that this court erred in its original opinion in the following particulars, to wit: First. In considering appellants' first and second assignments, because they are too general. Second. In reversing and rendering this cause, because the evidence is conflicting. Third. Because the record shows that the evidence in behalf of appellees was not fully developed on the trial, they having introduced no testimony. Fourth. In the finding of the fact by this court that "the change in the name from the F. E. & C. U. of A. to F. E. & C. U. of T. was ratified by a majority of all the local unions of Texas, upon a referendum vote." Fifth. In holding, in substance, that the acceptance of a charter from the F. E. & C. U. of T. was a repudiation and surrender of the charter theretofore obtained from the F. E. & C. U. of A.

[3] Taking these specifications in reverse order, we still adhere to the holding that the acceptance of a charter under the Texas organization was, in effect, a surrender of the charter granted by the national organization. The state organization had been formed as an intermediate body between the national organization and the local unions, and had been accepted by the national organization as such, and paid dues to the national body, and was supported by dues paid to it by the various local unions. A "charter" is the authority by virtue of which an organized body acts, and, in case of any conflict arising out of the exercise of the functional authority granted by two charters, certainly the last charter accepted would prevail.

As to the finding by this court that the change in name "had been ratified by a majority vote of all the local unions, etc.," W. D. Lewis, president of the F. E. & C. U. of T., testified that the constitution of said Texas organization, containing the change in name, had been adopted by the entire membership of the state (S. F. p. 4), and that "this printed copy of the constitution and by-laws is the law that governs the local, county, and district unions in Texas" (S. F. p. 6). This evidence as to the adoption of the new constitution and by-laws was, as far as we have been able to determine, uncontroverted.

[4] As to the alleged error of this court in reversing and rendering judgment, rather than in reversing and remanding for new trial, because the appellant introduced no evidence in the court below, as complained of in the third specification in motion for rehearing, there is nothing in the record to show that defendants in the court below had any evidence which they were denied the right to introduce. They filed no motion for continuance, or at any time indicated the existence of any evidence not given on the trial. One of the principal witnesses for the plaintiffs was G. R. Stracener, one of the defendants, whom the defense had ample opportunity to cross-examine, and the process of the court was open to the defense to secure any other testimony desired. That the evidence upon some matters was conflicting, as alleged in the second specification, would not make improper a judgment by this court which rendered judgment for appellants, if such action was sufficiently supported by uncontroverted evidence upon the material issues, or by the allegations in the verified pleadings of plaintiffs and not denied by defendants' answer.

Plaintiffs alleged in their verified petition that the plaintiffs were the duly elected and acting officers or directors of the Gorman District Union of Texas, and that certain named plaintiffs constituted the executive committee, who, as such, were entitled to the custody and control of the described property and the funds arising by reason of the operation of the warehouse, and that plaintiffs were the legal custodians of the books, papers, etc., belonging to said district union; and there is no dispute that there was a by-law to that effect.

[5] The plaintiffs and the defendants are members of the same organization. If that organization obtained a charter, which was improper, and is attempting to exercise, through the plaintiffs, rights and powers under and by virtue of that charter, defendants are in no position to complain, since as members of the corporation they are bound by its terms, as also by its by-laws under which plaintiffs claim. It is not contended that the plaintiffs have violated any of the by-laws of the organization or any of its charter provisions, nor that the plaintiffs were not elected in accordance with its by-laws, nor that by the terms of the by-laws plaintiffs are not given right of possession and control of the property for which the plaintiffs sue. In the absence of such showing, the acts of the organization through the plaintiffs, as its officers, are binding upon the defendants. This conclusion of itself furnishes a sufficient reason for a reversal of the

judgment, and the question here discussed, we think, is sufficiently raised under appellants' twelfth and thirteenth assignments of error, wherein complaint is made of the action of the court in overruling appellants' motion for a new trial, one of the grounds of which presents, substantially, that question, irrespective of the first and second assignments mentioned in the original opinion.

The motion is overruled.

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

