UTAH COUNTY, a body politic, By and Through the COUNTY BOARD OF EQUALIZATION OF UTAH COUNTY, State of Utah, Plaintiff,

v.

INTERMOUNTAIN HEALTH CARE, INC., and Tax Commission of the State of Utah, Defendants.

No. 18565.

Supreme Court of Utah.

Sept. 16, 1986.

Noall T. Wootton, Lynn Davis, Provo, for plaintiff.

David L. Wilkinson, Frank V. Nelson, J. Scott Lunberg, Salt Lake City, for defendants.

STEWART, Justice:

The issue on this appeal is whether a hospital which is under construction is entitled to a charitable tax exemption from *ad valorem* property taxes during the time of construction.

Orem Community Hospital is owned and operated by Intermountain Health Care, Inc. (IHC). As of January 1, 1981, the hospital was under construction. It was completed and opened for business July 1, 1981. Since hospital services were not actually provided by Orem Community Hospital on January 1, 1981, the Utah County Board of Equalization denied IHC's application for an exemption from *ad valorem* property taxes pursuant to the language of U.C.A., 1953, §§ 59–2–30 and 59–2–31,[1] which construe Article XIII, § 2 of the Utah Constitution.

IHC appealed to the Utah State Tax Commission, which reversed the decision of the Utah County Board of Equalization and held that "the construction of the hospital

---

1. Section 59–2–30 provides:

This section is intended to clarify the scope of exemptions for property used exclusively for either religious worship or charitable purposes provided for in section 2 of Article XIII of the Constitution of the state of Utah. This section is not intended to expand or limit the scope of such exemptions. Any property whose use is dedicated to religious worship or charitable purposes including property which is incidental to and reasonably necessary for the accomplishment of such religious worship or charitable purposes, intended to benefit an indefinite number of persons is exempt from taxation if all of the following requirements are met:

(1) The user is not organized to produce a profit from the use of the property.

(2) No part of any net earnings, from the use of the property, inures to the benefit of any private shareholder or individual, but any net earnings shall be used directly or indirectly, for the charitable or religious purposes of the organization.

(3) The property is not used or operated by the organization or other person so as to benefit any officer, trustee, director, shareholder, lessor, member, employee, contributor, or any other person through the distribution of profits, payment of excessive charges or compensations.

(4) Upon the liquidation, dissolution, or abandonment of the user no part of any proceeds derived from such use will inure to the benefit of any private person.

Section 59–2–31 provides:

(1) Property used exclusively for religious, hospital, educational, employee representation, or welfare purposes which use complies with the requirements of section 59–2–30, shall be deemed to be used for charitable purposes within the exemption provided for in section 2 of Article XIII of the Constitution of the state of Utah, and section 59–2–30.

(2) This section shall not defeat exemptions for property not specifically enumerated which may be found to be within the exemption provided in section 2 of Article XIII of the Constitution of the state of Utah.

was 'incidental to and reasonably necessary' to accomplish the hospital's charitable purposes," within the meaning of that language in § 59-2-30. Utah County appealed that ruling to this Court.

Since Utah County had challenged the constitutionality of §§ 59-2-30 and 59-2-31 under Article XIII, § 2 of the Utah Constitution insofar as those sections exempted nonprofit hospitals from property taxes in a case that was pending before this Court when the instant appeal was filed, the parties stipulated to refrain from arguing the constitutionality of those provisions on this appeal. That issue has now been resolved. In *Utah County v. Intermountain Health Care, Inc.*, 709 P.2d 265 (Utah 1985), a majority of the Court held that two nonprofit hospitals were not entitled to property tax exemptions as charities under Article XIII, § 2, at least on the record in that case, even though the hospitals met the statutory criteria set forth in §§ 59-2-30 and 59-2-31 for an exemption. The Court also held, however, that the decision in that case did not apply retroactively because of the traditional, long-standing reliance of nonprofit hospitals on the exemption. Accordingly, the effective date for the change in the law was held to be January 1, 1986. *Id.* at 279.

The parties in this case have also stipulated that when the Orem Community Hospital commenced operation, it met the criteria set forth in §§ 59-2-30 and 59-2-31 for an exemption as a charitable hospital. The issue therefore posed by this appeal is whether a charitable hospital is entitled to a property tax exemption while it is under construction and before it commences operation.

■ Although exemptions from taxation are generally construed narrowly, *e.g.,* *Loyal Order of Moose No. 259 v. County Board of Equalization*, 657 P.2d 257, 261 (Utah 1982); *Salt Lake County v. Tax Commission ex rel. Good Shepherd Lutheran Church*, 548 P.2d 630, 631 (Utah

1976), they should, nonetheless, be construed with sufficient latitude to accomplish the intended purpose. *See, e.g., South Iowa Methodist Homes, Inc. v. Board of Review*, 257 Iowa 1302, 1305, 136 N.W.2d 488, 490 (1965).

■ To deny a charitable exemption for real estate on which a hospital is being constructed when its use is irrevocably committed to purposes that will qualify for a charitable exemption at its completion would not be consistent with the constitutional policy of encouraging private charities. The benefits conferred on the public by charities can only be diminished, to a greater or lesser extent in the long run, if monies committed to the charity must be used to pay *ad valorem* property taxes. *E.g., Society of St. Vincent DePaul v. Department of Revenue*, 272 Or. 360, 537 P.2d 69 (1975); *Hedgecroft v. City of Houston*, 150 Tex. 654, 662, 244 S.W.2d 632, 636 (1951). A contrary policy might well tend to deter charities from shouldering burdens which would otherwise have to be assumed by the state. *Overmont Corp. v. Board of Tax Revision*, 479 Pa. 249, 251, 388 A.2d 311, 312 (1978); *South Iowa Methodist Homes*, 257 Iowa at 1305, 136 N.W.2d at 490.[2]

In *Hedgecroft, supra,* residential property was donated to a nonprofit charitable organization which agreed to remodel the property and run it as a polio clinic. During the remodeling period, the city imposed a tax on the property, claiming that the organization had failed to show that the property was being actually, directly, and exclusively used for charitable purposes. The trial court and the intermediate appellate court affirmed the decision denying an exemption. The Texas Supreme Court reversed, stating:

> It is obvious that without some preparation of the premises, there never could have been a polio clinic in operation. To fulfill the charitable purpose of treating polio sufferers, Hedgecroft had first to

---

**2.** Some jurisdictions have denied exemptions for charitable facilities under construction. *E.g., Lake Worth Towers, Inc. v. Gerstung*, 262 So.2d 1 (Fla.1972); *Young Men's Christian Association v. City of Orange*, 3 N.J.Misc. 404, 128 A. 580 (1925); *Institute of Holy Angels v. Borough of Fort Lee*, 80 N.J.L. 545, 77 A. 1035 (1910). These cases, however, either depend on a narrow definition of the term "use" or arise from a different kind of statutory scheme.

remodel the property, then to operate the clinic. Preparation for and operation of the clinic are both indispensable. Both took place on the premises. Both constituted a use by Hedgecroft of the premises. The constitutional clause which admittedly exempts the property during operation likewise exempts the property during bona fide necessary preparation.

*Hedgecroft,* 150 Tex. at 661–62, 244 S.W.2d at 636.

 The same reasoning applies in this case. Since the parties have stipulated that Orem Community Hospital met the criteria when it went into operation for an exemption under §§ 59–2–30 and –31, it was also entitled to an exemption during the construction of the hospital.[3]

Affirmed.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

**3.** However, property held by charitable organizations which is not used for charitable purposes and is not under development for charitable purposes is not entitled to exemption even if at some time in the indefinite future the charitable organization intends to use the property for a charitable use. *E.g., Hillman v. Flagstaff Community Hospital,* 123 Ariz. 124, 598 P.2d 102 (1979); *Hedgecroft v. City of Houston,* 150 Tex. 654, 662, 244 S.W.2d 632, 636 (1951).